UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DARREL WAYNE VANDERGRIFF,<br><br>    Plaintiff,<br><br>    v.<br><br>TONY GAMBONE,<br><br>    Defendant. | Case No. C06-5381RBL<br><br>REPORT AND<br>RECOMMENDATION<br><br>**NOTED FOR:**<br>**January 4, 2008** |

    This Civil Rights action, brought pursuant to 42 U.S.C. 1983, has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. § 636(b)(1)(B). The plaintiff has been granted leave to proceed *in forma pauperis.*

    Before the court is defendant Gambone's motion for summary judgment (Dkt. # 81). Mr. Gambone is the only remaining defendant in this action. All other defendants were dismissed as plaintiff's other claims had not been exhausted through the prison grievance process (Dkt. # 41).

    The only remaining claim in this action is that plaintiff's Eighth Amendment right to adequate medical care was violated by Mr.Gambone's treatment on him May 6, 2005. Plaintiff has responded, (Dkt. # 82), defendants have replied (Dkt. # 83). This matter is now ripe for review.

REPORT AND RECOMMENDATION - 1

# FACTS

The parties have presented conflicting statements of facts. Defendants set forth the facts as follows:

In his Complaint, Plaintiff alleges that his Eighth Amendment rights were violated by the named Defendants while he was incarcerated at various DOC institutions during a period spanning more than two years[1]. See Dkt. 1 (Complaint). Despite Mr. Vandergriff's references to events at the Washington State Penitentiary (WSP) occurring from April 21, 2005, to August 16, 2005, (see Dkt. 1 [Complaint] at pp. 4-8; and Dkt. 31 [Motion to Dismiss] Exhibit 1, Attachment A.), Mr. Vandergriff's experience with Mr. Gambone is limited to a single encounter on May 6, 2005, in the Washington State Penitentiary (WSP) health care unit in which Mr. Vandergriff alleges he complained to Mr. Gambone of foot pain and that he asked for the prescription of a specific shoe manufactured by New Balance. Id. Plaintiff alleges that he was not prescribed the shoe, and that instead, according to the complaint, he was offered pain medication by Mr. Gambone. Dkt. 1 (Complaint) at 4.

Mr. Gambone submits his declaration in which he describes a short encounter between himself and Mr. Vandergriff on May 6, 2005. At the time, he was a Physician's Assistant working at the WSP clinic. Mr. Gambone testifies that Mr. Vandergriff told him that he had back pain and that he needed a special shoe, which Mr. Gambone understood to mean a shoe made by "New Balance." Exhibit 1, Declaration of Anthony Gambone. Mr. Vandergriff did not discuss foot pain during the encounter. Id. Although Mr. Gambone was willing to examine him and to discuss medication for his back pain, Mr. Gambone stated he did not believe that Mr. Vandergriff would be prescribed New Balance shoes for his complaint of back pain. Id. However, Mr. Gambone told Mr. Vandergriff he could seek the approval of the health care manager on his request for a shoe. Id. Mr. Vandergriff became angry and threatened to sue him. Id. Mr. Vandergriff left the examination room after approximately ten minutes, preventing examination by Mr. Gambone. See MSJ Exhibit 1, ¶¶ 3-7 and Attachment A. After the encounter ended, Mr. Gambone wrote a primary encounter report indicating what transpired during their brief meeting. Id.

---

[1] Plaintiff's Complaint refers to events occurring from April 2004 through June 2006. *See* Complaint. During this time, Plaintiff was housed at numerous DOC institutions. Dkt. 31, Exhibit 1, ¶ 3. From April 22, 2004, until his release on community custody on August 26, 2004, Plaintiff was incarcerated at Coyote Ridge Corrections Center. Dkt. 31, Exhibit 1, Attachment A, OBTS Legal Face Sheet. He was readmitted to DOC in March 2005 and remained at Washington Corrections Center until April 21, 2005, when he was sent to the Washington State Penitentiary. Id. On August 16, 2005, Plaintiff was transferred to the Airway Heights Corrections Center, where he remained until October 13, 2005. Id. From October 17, 2005, to February 2, 2006, he was housed at the Olympic Corrections Center. Id. Thereafter, Plaintiff was transferred to the Clallam Bay Corrections Center, where he remained until March 22, 2006. Id. From March 24, 2006, to April 17, 2006, he was housed at both Cedar Creek Corrections Center and Stafford Creek Corrections Center. Id. Thereafter, Plaintiff was transferred to the Monroe Correctional Complex, where he was housed at the time he filed this Complaint in July 2006. Id.

REPORT AND RECOMMENDATION - 2

Mr. Gambone concluded his encounter report by saying: "Instructed patient to notify HCM of his concerns, if they feel that he meets criteria I would have no problem issuing him shoes." Id. Attachment A. After the encounter, Mr. Gambone did not have further encounters with Mr. Vandergriff. Id. He testifies he did not prevent Mr. Gambone from accessing the WSP clinic or from taking up his request with the health care manager. Id. ¶ 7. [footnote omitted]

On or about May 9, 2005, while housed at WSP, Mr. Vandergriff filed a Level I grievance under Grievance Log I.D. No. 0510770 complaining that "Medical Provider Gambone" exhibited rude and unprofessional behavior toward Plaintiff at sick call the morning of May 5, 2005. See Dkt. 31, Exhibit 2, ¶ 10 and Attachment A, Level I Grievance – Grievance Log I.D. No. 0510770. According to Mr. Vandergriff, Mr. Gambone was indifferent to his complaints of pain and failed to properly diagnose the cause of his pain. Id. Mr. Vandergriff's suggested remedy was the issuance of different shoes. Id.

The Level I grievance was automatically escalated to Level II because of the late response from the investigator. Dkt. 31, Exhibit 2, ¶ 10. On or about July 6, 2005, Mr. Vandergriff received the Level II response stating that he had been seen by Physician.s Assistant Dan Delp on June 27, 2005, and that arch supports were ordered for him as a conservative measure. See Dkt. 31, Exhibit 2, Attachment B, Level II Grievance – Grievance Log I.D. No. 0510770. Plaintiff was instructed to report to sick call with any other complaints. Id.

On July 15, 2005, Mr. Vandergriff appealed his grievance to Level III, asking that he be provided with special shoes and requesting action against Defendant Gambone for staff misconduct. See Dkt. 31, Exhibit 2, Attachment C, Level III Grievance – Grievance Log I.D. No. 0510770. On or about May 3, 2006, Mr. Vandergriff received a response to his Level III grievance upholding the Level II response. Id. The response stated that the matter had been reviewed by both the Grievance Coordinator and the Medical Director. Id.

(Dkt. # 81, pages 2 to 4).

Plaintiff's version of the facts is as follows:

Initially Defendant Gambone 'saw' Plaintiff Vandergriff 'as a patient' at the WSP Clinic on May 06th, 2005.

During the clinic visit the Plaintiff explained to Defendant Gambone a physicians assistant, that he was experiencing a painful condition in his lower back, hips, and feet and that he had the same troubles at CRCC the previous summer (2004) and that his painful condition then was much alleviated by the issuance of a better quality shoe.

Defendant Gambone had the authority to authorize the issuance of a better quality shoe, a medical shoe, for the Plaintiff, and this would have helped to alleviate Plaintiff's suffering, but instead the Defendant, without bothering to review Plaintiff's Chart and Medical Files (medical History) and without performing any type of Physical Examination, proceeded to rudely tell Plaintiff that he **"wasn't getting no shoes, but could get some pain medication."**

The Defendant then told Plaintiff that if he did not like it he could 'grieve' him

REPORT AND RECOMMENDATION - 3

    and then the Defendant abruptly terminated the 'visit'.

    The Plaintiff did have a persistently painful problem that affected his back, hips, and feet and this condition stemmed from a stint in the 'Boot Camp' Program he was required to participate in the summer of 2004 at CRCC and he attempted to explain this to the Defendant (Gambone) but was rudely cut off by Defendant Gambone and the 'visit' was abruptly terminated by Defendant Gambone.

    As Defendant Gambone's unusual behavior at the Clinic Visit did not seem to be appropriate or acceptable healthcare, Plaintiff Vandergriff did then take Defendant Gambone's 'advice' (that he was so arrogant about!)  And file a grievance-# 0510770 (see attachment -A) which incidentally the Defendants postpone answering for one full year the level -III grievance.

....

    Also, in his motion for summary judgment Dfendant [sic] Gambone seems to focus largely on a (false) claime [sic] that he ostensibly "intsucted [sic] the Plaintiff to notify 'HCM' of his concerns, if they(?) Feel he meets the Criteria, I (Defendant Gambone) would have no problem issuing him (Plaintiff) shoes, [sic]"

    Factually, Plaintiff states now with emphasis that at no time during the clinic visit on May 06th 2005, did Defendant Gambone make the above statement to the Plaintiff.  Period. ....

(Dkt. # 82, pages 2 to 6).  The court notes there is not a page 5 to plaintiffs response and that portions of the plaintiffs statement of facts that contained argument as opposed to facts have been omitted.  Further, portions of plaintiff's facts that attempt to raise a claim of retaliation are omitted as there is no retaliation claim in the complaint (Dkt # 1).

  Defendant moves to dismiss and argues Mr. Vandergriff fails to show an Eighth Amendment violation based on this single encounter and Defendant Gambone is entitled to qualified immunity.  (Dkt # 81, page 4).

## STANDARD

  Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

  There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a

REPORT AND RECOMMENDATION - 4

1 rational trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
2 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not
3 simply "some metaphysical doubt."). See also Fed. R. Civ. P. 56 (e). Conversely, a genuine dispute
4 over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring
5 a judge or jury to resolve the differing versions of the truth. Anderson v. Liberty Lobby, Inc., 477 U.S.
6 242, 253 (1986); T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626,
7 630 (9th Cir. 1987).

8       The determination of the existence of a material fact is often a close question. The court must
9 consider the substantive evidentiary burden that the nonmoving party must meet at trial, e.g. the
10 preponderance of the evidence in most civil cases. Anderson, 477 U.S. at 254; T.W. Elec. Service Inc.,
11 809 F.2d at 630. The court must resolve any factual dispute or controversy in favor of the nonmoving
12 party only when the facts specifically attested by the party contradicts facts specifically attested by the
13 moving party. Id.

14       The nonmoving party may not merely state that it will discredit the moving party's evidence at
15 trial, in hopes that evidence can be developed at trial to support the claim. T.W. Elec. Service Inc., 809
16 F.2d at 630.(relying on Anderson, supra). Conclusory, nonspecific statements in affidavits are not
17 sufficient, and "missing facts" will not be "presumed." Lujan v. National Wildlife Federation, 497 U.S.
18 871, 888-89 (1990).

19 <center>DISCUSSION</center>

20    A.     Eighth Amendment Medical Claim.

21       The government has an obligation to provide medical care for prisoners, and the Eighth
22 amendment proscribes deliberate indifference to their serious medical needs. Estelle v. Gamble, 429
23 U.S. 97 (1976). Such conduct is actionable under 42 U.S.C. § 1983. McGuckin v. Smith, 974 F.2d
24 1050, 1059 (9th Cir. 1992)(reversed on other grounds by WMX Technologies, Inc. v. Miller, 104
25 F.3d 1133, (9th Cir. 1997)).

26       To establish deliberate indifference, a prisoner must show that a defendant purposefully
27 ignored or failed to respond to the prisoner's pain or possible medical need. McGuckin, 974 F.2d at

28 REPORT AND RECOMMENDATION - 5

1060; Estelle, 429 U.S. at 104. A determination of deliberate indifference involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. McGuckin, 974 F.2d at 1059. A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Id. In order to establish deliberate indifference there must first be a purposeful act or failure to act on the part of the defendant. McGuckin, Id. at 1060.

1. Nature of the injury, the objective component.

Plaintiff alleges he told Defendant Gambone he was in pain. Plaintiff alleges he told Mr. Gambone he suffered from back, hip, and foot pain. Plaintiff alleges Mr. Gambone did not perform any kind of examination and that Mr. Gambone terminated the visit without issuing any medications. Plaintiff denies defendant's allegation that he was informed he could go to the Health Care Manager regarding getting new shoes.

Plaintiff alleges that prior to being seen at the Washington State Penitentiary he had foot, back, and hip problems at another facility because the state issued shoes did not fit him and did not provide him with proper support. He alleges the pain became so bad he could not run and even walking was very painful (Dkt # 6, pages 3 and 4). Plaintiff also alleges that 7 weeks after Mr. Gambone refused to see him he was seen by another medical provider at WSP, Mr. Delp. Plaintiff alleges Mr. Delp took pictures of plaintiff's feet to document the swelling, broken blood vessels, and blood blisters (Dkt. # 6, page 6). The court notes that no pictures have been placed in evidence. Under these facts the court considers the injury sufficiently serious to state a claim.

2. Subjective element.

Plaintiff alleges the defendant did not conduct any examination and terminated the visit without issuing any medication. A refusal to treat plaintiff may be inferred from these allegations. This court cannot weigh the evidence. A genuine issue of fact precludes summary judgment.

B. Qualified Immunity.

Defendant argues he is entitled to qualified immunity from damages. Prison officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established

REPORT AND RECOMMENDATION - 6

statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

In order to determine whether an official is entitled to qualified immunity, the court engages in a two-prong inquiry. If either prong is satisfied, then the official is entitled to qualified immunity. The first prong is whether the law governing the official"s conduct was clearly established. If the relevant law was not clearly established, the official is entitled to immunity from suit. Somers v. Thurman, 109 F.3d 614, 617 (9th Cir. 1997), cert. denied, 522 U.S. 852 (1997). If the law was clearly established, the second question is whether, under that law, a reasonable official could have believed the conduct was lawful. Id.

The Clearly established prong.

The duty to provide medical treatment is well established. The government has an obligation to provide medical care for prisoners, and the Eighth amendment proscribes deliberate indifference to their serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976).  Plaintiff has presented a triable issue of fact as to how serious his condition was and how much pain he was in.

The subjective element prong.

The subjective prong works well when the facts are not in dispute.  Here, there is a factual dispute as to who terminated the visit and whether plaintiff was informed he could seek the shoes he wanted by contacting the Health Care Manager.  Plaintiff alleges defendant Gambone refused to examine him and that it was defendant Gambone who abruptly terminated the visit without prescribing any medication.  Under this set of facts there is circumstantial evidence which may lead a trier of fact to conclude defendant acted with animus, for the very purpose of causing harm or inflicting pain.  The court is not free to weigh the evidence and questions of fact preclude qualified immunity without trial.

## CONCLUSION

Material facts are in dispute to such an extent the defendant's motion for summary judgment should be **DENIED.** Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections.

REPORT AND RECOMMENDATION - 7

*See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **January 4, 2008**, as noted in the caption.

DATED this 4, day of December, 2007.

/S/ *J. Kelley Arnold*
J. Kelley Arnold
United States Magistrate Judge

REPORT AND RECOMMENDATION - 8